UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICKY JULIO ORTIZ-RIVAS,

                Plaintiff,

v.                                                Case No. 20-cv-1844-pp

STEVEN T. MNUCHIN,

                Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 8), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Ricky Julio Ortiz-Rivas, an inmate at the Oneida County Jail who is representing himself, filed an amended complaint alleging that the defendant violated his rights under federal law. Dkt. No. 11. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens the amended complaint, dkt. no. 11.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let a prisoner plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On January 4, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $32.84. Dkt. No. 6. The court subsequently gave the plaintiff more time, until March 19, 2021, to pay the initial partial filing fee. Dkt. No. 10 The court received that fee on March 1, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A "frivolous" complaint "lack[s] an arguable basis either in law or fact." Felton v. City of Chi., 827 F.3d 632, 635 (7th Cir. 2016) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). A complaint is factually frivolous if its allegations are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." Id. (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Allegations that are merely "unlikely," "improbable," or "strange," do not meet this standard. Id. (quoting Denton, 504 U.S. at 33). A claim is legally frivolous if it is "based on an indisputably meritless legal

2

theory." Id. (quoting Neitzke, 490 U.S. at 327–28). A "malicious" complaint is one brought for purposes of harassment. Heard v. Blagojevich, 216 F. App'x 568, 570 (7th Cir. 2007) (citing Lindell v. McCallum, 352 F.3d 1107, 1109 (7th Cir. 2003)).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

B. The Plaintiff's Allegations

The plaintiff has sued Steven Mnuchin, former United States Secretary of the Treasury. Dkt. No. 11 at 1. The plaintiff alleges that in March 2020, Congress passed the Coronavirus Aid, Relief and Economic Security Act to provide "emergency relief to eligible individuals." Id. at 2. The plaintiff says that Congress "failed to inform[] or notify[y] the people who can if any agency,

3

organization, or government office can intercept the CARES Act also known as stimulus package." Id. He says that when he called the child support office, he was told that "both [his] federal/state and CARES Act payment was forward[ed] to the Wisconsin Support Collections Trust Funds to be applied to [his] child support obligation." Id. The plaintiff says that his child's mother collected his $1,700 payment ($1,200 for himself and $500 for his child) "among of a payment of $1200.00 for herself." Id. at 2-3. According to the plaintiff, the CARES Act was designed to provide him relief because of COVID-19. Id. at 3. He asserts, however, that it caused him more pain, suffering and struggle because he lost his job due to COVID-19, couldn't pay his rent and was kicked out of his home, causing him to be homeless. Id.

The plaintiff alleges that on November 26, 2020, the Department of Corrections provided inmates with "Notice 1444-D (CARES Act Economic Impact Payment to Incarcerated Individuals)" that stated that a federal court had ruled that the IRS position was "UNLAWFUL." Id.

The plaintiff asks that the court order the Department of Treasury to award him his $1,700 CARES Act payment and punitive damages for hardship. Id. at 4. He asserts that because he didn't receive this payment, he wasn't able to pay rent; he says that losing his job meant he couldn't pay for repairs to his vehicle, which the CARES Act payment would have helped him do. Id. He also asks the court to order the Department of Treasury to reimburse the debt he incurred during this process or to declare that he won't be responsible for repayment of the first CARES Act payment. Id.

4

C.  <u>Analysis</u>

The CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), provides for the disbursement of "economic impact payments" (sometimes called "EIP payments") of $1,200 or more to certain taxpayers. <u>See</u> CARES Act §2201, 134 Stat. 335, codified at 26 U.S.C. §6428. Based on the plaintiff's allegations, it appears that his EIP was offset because he owed delinquent child support. The CARES Act authorizes such offsets. <u>See</u> fiscal.treasury.gov/top/ faqs-for-public-covid-19.html (last visited March 24, 2021) (The Economic Impact Payment under the CARES Act can be offset only to collect delinquent child support obligations that have been referred by the state.). An individual's entire EIP authorized by the CARES Act can be offset, up to the amount of his or her child support debt. <u>See</u> <u>id.</u>

The plaintiff alleges that in November 2020, the Department of Corrections notified inmates that the IRS position on the CARES Act payments to inmates was unlawful. The cover letter to the plaintiff's original complaint states that the plaintiff's lawsuit is "similar to the one filed" in <u>Scholl v. Mnuchin</u>, 489 F. Supp. 3d 1008 (N.D. Cal. 2020). Dkt. No. 1-2. <u>Scholl</u> was a class action in which the court preliminarily certified the following class:

> All United States citizens and legal permanent residents who:
>
> (a) are or were incarcerated (i.e., confined in a jail, prison, or other penal institution or correctional facility pursuant to their conviction of a criminal offense) in the United States, or have been held to have violated a condition of parole or probation imposed under federal or state law, at any time from March 27, 2020 to the present;

5

(b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation because they earned an income below $12,000 (or $24,400 if filing jointly) in the respective tax year;

(c) were not claimed as a dependent on another person's tax return; and

(d) filed their taxes with a valid Social Security Number, and, if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.

Excluded from the class are estates and trusts; defendants; the officers, directors, or employees of any defendant agency; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

Id. at 1047. On October 14, 2020, the Scholl court finally certified that class and entered the following declaratory relief:

[T]he court finds and declares that title 26 U.S.C. § 6428 does not authorize defendants to withhold advance refunds or credits from class members solely because they are or were incarcerated. The court further finds and declares that defendants' policy that persons who are or were incarcerated at any time in 2020 were ineligible for advance refunds under the Act is both arbitrary and capricious and not in accordance with law.

Scholl v. Mnuchin, No. 20-cv-05309-PJH, 2020 WL 6065059, at *21 (N.D. Cal. Oct. 14, 2020). The court issued a permanent injunction prohibiting the defendant from withholding benefits from any class member solely on the basis of the class member's incarcerated status and to reconsider advance refund payments that had been withhold, intercepted or returned based on someone's incarcerated status. Id. at *22.

With respect to specific payments the court stated:

The court takes no position on whether plaintiffs or class members are in fact owed advance refund payments or the amount of those payments. Indeed, the court's Rule 23(b)(2) finding was premised on the "indivisible nature of the injunctive or declaratory remedy

6

warranted" but not "an individualized award of monetary damages." Dkt. 50 at 42 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360-61 . . . (2011)). The court's determination in this order is that the IRS's action was "arbitrary, capricious, . . . or otherwise not in accordance with law" and the appropriate remedy is to "hold unlawful and set aside" that agency action. 5 U.S.C. § 706(2). It is incumbent on the IRS, as the agency charged by Congress, to make individual determinations whether an individual is an "eligible individual" and meets the various criteria delineated in the Act.

Id. at *20.

The amended complaint does not allege that the plaintiff did not receive his EIP because he was a prisoner. It alleges that the plaintiff did not receive the EIP because it was intercepted and applied to delinquent child support—an action authorized by the CARES Act. The decision in Scholl barring the IRS from withholding EIP payments from prisoners solely because of their incarcerated status has no impact on, or relation to, the question of whether EIPs can be intercepted to pay delinquent child support.

It is not even clear that the plaintiff was incarcerated at the time his EIP was intercepted to pay the delinquent child support. It appears that he likely was not. The Wisconsin Department of Corrections Inmate Locator website shows that the plaintiff was admitted to Dodge Correctional Institution from the Outagamie County Jail on August 20, 2020—some five months after Congress passed the CARES Act. https://appsdoc.wi.gov/lop/detail.do. While the plaintiff likely was in the county jail for some time prior to being transferred to Dodge, he says that he lost his job and his home due to COVID-19, mentioning the months of March and April of that year, and that the EIP would have helped him make repairs to his vehicle. These statements imply that the

7

plaintiff was out in the community at the time his EIP was intercepted and applied to pay the delinquent child support. If so, that would mean that the IRS could not have withheld his EIP because he was a prisoner and that the ruling in Scholl could not afford him relief.

The amended complaint fails to state a claim for which a federal court may grant relief. Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where, as here, the amendment would be futile. See Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. 2021).

### III. Motion to Appoint Counsel (Dkt. No. 8)

The plaintiff filed a motion asking the court to appoint an attorney for him. Because the court is dismissing the plaintiff's complaint, it will deny that motion as moot.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

The court **DENIES AS MOOT** the plaintiff's motion to appoint counsel. Dkt. No. 8.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

8

Case 2:20-cv-01844-PP    Filed 04/14/21    Page 8 of 10    Document 12

The court **ORDERS** that the Oneida County Sheriff or his designee must collect from the plaintiff's institution trust account the **$317.16** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The sheriff must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Oneida County Sheriff and will email a copy of this order to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ

P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 14th day of April, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**