UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RICKY JULIO ORTIZ-RIVAS,

           Plaintiff,

v.                                        Case No. 20-cv-1844-pp

STEVEN T. MNUCHIN,

           Defendant.

---

**ORDER DENYING PLAINTIFF'S LETTER REQUESTS TO ORDER INSTITUTION TO STOP COLLECTING APPEAL FEE (DKT. NOS. 25, 26, 27)**

---

      Plaintiff Ricky Julio Ortiz-Rivas, who is incarcerated at the Stanley Correctional Institution, filed an amended complaint alleging that the defendant, former United States Secretary of the Treasury Steven Mnuchin, violated his rights under federal law because the plaintiff's $1,700 Coronavirus Aid, Relief and Economic Security Act (CARES Act) payment was sent to the Wisconsin Support Collections Trust Fund to be applied to his child support obligation. Dkt. No. 11 at 2-3. In screening the amended complaint under 28 U.S.C. §1915A, the court found that the plaintiff had failed to state a claim for relief under federal law because the CARES Act authorizes offsets of economic impact payments for delinquent child support payments. Dkt. No. 12 at 5. The court also concluded that the decision in Scholl v. Mnuchin, 489 F. Supp. 3d 1008 (N.D. Cal. 2020), which barred the IRS from withholding economic impact payments from prisoners solely because of their incarcerated status, had no impact on or relation to the question of whether economic impact payments can be intercepted to pay delinquent child support. Dkt. No. 12 at 7. The court explained that, in any event, it appeared that the plaintiff was not incarcerated

1

when his payment was intercepted to pay the delinquent child support. Id. The court dismissed the amended complaint for failure to state a claim for which a federal court could grant relief and found that any amendment would be futile. Id. at 8. Finally, the court denied as moot the plaintiff's motion to appoint counsel. Id.

The court dismissed the case on April 14, 2021. Dkt. No. 12. On May 17, 2021, the court received from the plaintiff a document titled "Notice of Appeal to United States Court of Appeals Eastern Circuit." Dkt. No. 15. The document stated that the plaintiff was appealing "to the United States Court of Appeal for the Eastern Circuit from the final judgment of the district court for the district of Wisconsin, entered in this case on 14th of April, 2021." Id. at 1. The plaintiff appears to have signed the document. Id. at 2. He included with the notice a certificate of mailing, indicating that he'd placed the document in the institution's internal mail system on May 6, 2021. Id. at 3. Based on that notice of appeal, the Seventh Circuit Court of Appeals—the court to which someone who loses a case in the Eastern District of Wisconsin must appeal—opened an appeal, Case No. 21-1887. Dkt. No. 17.

A week later, on May 24, 2021, the court received a letter from the plaintiff. Dkt. No. 18. He said he'd asked for a lawyer because he thought he'd filed the wrong motion or the wrong form; he said he didn't believe his civil rights had been violated, but that he thought using a pandemic stimulus check to pay child support was not a way of helping someone during a pandemic. Id. at 1-2. He said he had tried to explain how the stimulus payment would be helpful to him. Id. He said that because he hadn't intended to allege a civil rights violation, he'd asked the court to appoint him an attorney in the case that the court had dismissed on April 14. Id. He opined that the court was

wrong in finding that his complaint did not state a claim, and that if the court had appointed him a lawyer this could have been cleared up. Id. at 3. The plaintiff also stated that he was indigent, got no money from any one and could not afford to have the district court filing fee taken from his account; he thought that once he paid the initial partial filing fee, "it covered [him] and [he] didn't have to forward any more payment again because [he was] indigent." Id. at 4-5. He explained why he needed the money that was being deducted from his inmate account to pay the filing fee. Id. at 5. He concluded by saying that he tried to state a claim and asked the court to suspend the filing fee because he was indigent. Id. at 7.

The same day, the court sent the plaintiff a letter, advising him that the clerk's office had received his trust account statement,[1] but that for appeal purposes, he needed to file a new petition to proceed without prepaying the appellate filing fee. Dkt. No. 20. The clerk's office sent that letter because on May 17, 2021, the plaintiff had filed a notice of appeal.

On July 12, 2021, the court received a request from the plaintiff to "remit" the filing fee that had been deducted from his institution account, again stressing that he was indigent. Dkt. No. 21. He asked the court to issue an order "forgiving" the balance of the filing fee, citing Wisconsin law. Id. at 3.

On July 26, 2021, the court issued an order denying the plaintiff's request to suspend the filing fee, explaining (among other things) that incarcerated persons are liable for the full filing fee. Dkt. No. 22.

---

[1] The plaintiff appears to have filed this trust account statement to prove to the court that he was indigent and should not be required to pay the *district court* filing fee, not to support a request to proceed without prepaying the *appellate* filing fee.

On September 23, 2021, the Seventh Circuit Court of Appeals—the court to which someone who loses a case in the Eastern District of Wisconsin must appeal—issued an order stating that the plaintiff/appellant had neither paid the $505 appellate fee nor filed a motion for leave to proceed on appeal without prepaying the filing fee; it dismissed the plaintiff's appeal under Seventh Circuit Rule 3(b) for failure to pay the required docketing fee. Dkt. No. 23. The Seventh Circuit ordered the plaintiff/appellant to pay the appellate fee of $505 to the clerk of the district court, and ordered the clerk to collect the applicable appellate fees from the plaintiff/appellant's prison trust account using the mechanism of 28 U.S.C. §1915(b). Dkt. No. 23. On the same day the court of appeals issued the mandate, the clerk of the district court sent a letter to the warden of the Oneida County Jail (where the plaintiff previously was confined) directing the warden to begin forwarding payments toward the $505 appeal fee. Dkt. No. 24.

The plaintiff since has filed three letters regarding the collection of the appeal fee. Dkt. No. 25-27. In the first letter, the plaintiff says that he received an order from the Seventh Circuit telling him that the appeal had been dismissed "due to not filing the proper form that the court of appeal sent to file if [he] wanted to continue with this lawsuit." Dkt. No. 25 at 1. The plaintiff explained that he didn't want to appeal, so he disregarded filing any form that would have allowed the case to continue. Id. at 2. He indicated that he then received a notice to deduct payments from his inmate account, and he believed that the district court clerk's office issued this notice in error because he "never filed the form to appeal and . . . never made a partial payment to the appeals courts." Id. He asked that if there were no "forms of plaintiff motion for leave to proceed without prepaying the filing fee FOR APPEAL PURPOSE," that the

4

court send the institution an order saying there had been an error and refunding the money already removed from his account. Id. at 3.

In the plaintiff's second letter, he says that sometime in July or August he filed a "motion for appeal," and was under the impression that he "wasn't going to have to pay it." Dkt. No. 25 at 1. He says he then received a letter from the appeals court telling him that an appeal cost $505 and that he needed to file a form. Id. The plaintiff said that at that point, he had decided not to continue with the appeal because he couldn't afford the filing fee, so he did not complete "the form" (presumably, the motion for leave to appeal without prepaying the filing fee). Id. He says that he believed that if he didn't fill out the form, his appeal would be "void as if it never happened." Id. He explains that after he was transferred to Stanley, he began to notice that money was being taken out of his trust account for the appeal. Id. He says he immediately wrote to the appellate court and this court, explaining that he "had not asked for an appeal on this case." Id. at 2. He says he called this court and was told by a "secretary" that he had filed a notice of an appeal; he says he responded that because he did not submit "the rest of form/motion" that his appeal should be voided. Id. He says he tried to explain that he had no intention to appeal, but that the person to whom he spoke told him there was nothing she could do. Id. The plaintiff states that he cannot afford to pay the $505 appeal fee and asks the court to "remit" the appellate filing fee of $505. Id. at 1-3.

In his third letter (addressed to the Clerk of Court), the plaintiff states that his institution is incorrectly collecting the appeal fee. Dkt. No. 27 at 1. According to the plaintiff, his institution has been collecting 20% of his monthly income in months where his income is less than $10, in violation of §1915(b)(2). Dkt. No. 27 at 2-3. He asserts that the Department of Corrections

5

is in contempt of court and that it should not have been deducting 20% when he had less than $10. Id.

The plaintiff has asserted several times in these letters that he did not intend to appeal. But on May 17, 2021, the court received from the plaintiff a notice of appeal. Dkt. No. 14. When a person files a notice of appeal, that triggers the person's obligation to pay the appellate filing fee. See 28 U.S.C. §1915(b). The Seventh Circuit issued an order telling the plaintiff this, stating that his "appeal was subject to the Prison Litigation Reform Act and therefore the filing of the notice of appeal triggered the obligation to pay the $505.00 in filing fees." Ortiz-Rivas v. Mnuchin, Appeal No. 21-1887, dkt. no. 5 (7th Cir. Nov. 10, 2021). In that same order, the Seventh Circuit ordered that the "district court will continue to collect money from the prisoner's trust fund account until the filing fee has been paid." Id.

Regarding the way the plaintiff's institution collects the fee, the letter that the clerk of the district court sent to the plaintiff's prior institution directing collection of the $505 appeal fee cited 28 U.S.C. §1915(b)(2) and stated that "[p]ayments should be collected monthly from the inmate's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's account and payments should be forwarded to the Clerk of the District Court each time the amount in the account exceeds $10.00."[2] Dkt. No. 24. The plaintiff's description of his institution's practice of collecting 20% of his monthly income complies with the statute. See 28 U.S.C.

---

[2] The letter also stated that if the plaintiff "is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this letter and the enclosed order with the inmate's remaining balance to the receiving institution." Dkt. No. 24. The plaintiff's current institution should be collecting his appeal fee, as he says that it is doing.

§1915(b)(2) ("After payment of the initial partial filing fee, the prison shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid."); see also Robertson v. French, 949 F.3d 347, 353 (7th Cir. 2020) ("The custodial agency simply calculates the monthly payment due—20% of any income received the previous month—and forwards payment to the appropriate Clerk of Court each time that amount exceeds $10, until the full filing fee is paid."). The statute does not say that the prison may not deduct money unless the petitioner has more than $10 in his account. It says that the prison does not need to *send* the money until it totals $10 or more.

The court does not know why the plaintiff filed a notice of appeal if he did not intend to appeal. The court does not know why the plaintiff was under the impression that if he appealed, he would not have to pay a filing fee. The court understands that the plaintiff does not have much money and that it is hard for him to buy necessities and to stay in contact with his daughter given the little money he has and the things that have happened to him. But he decided to file a federal lawsuit. He decided (though he appears to have changed his mind) to file an appeal of the dismissal of that lawsuit. Courts charge a "filing fee" when someone *files* a case, and that person owes the filing fee. Incarcerated persons are allowed to pay the filing fee over time, but they owe it just as persons who are not incarcerated do.

The court will not "suspend" or "remit" the filing fee. The plaintiff owes the balance of the $402 district court filing fee, and he owes the $505 appellate

7

filing fee because he filed a notice of appeal. See 28 U.S.C. §1915(b)(1). The Department of Corrections is not in contempt of court.

The court **DENIES** the plaintiff's requests to order his institution to stop collecting the district court and appellate filing fees. Dkt. Nos. 25, 26, 27.

Dated in Milwaukee, Wisconsin this 24th day of October, 2022.

                            **BY THE COURT:**

                            **HON. PAMELA PEPPER**
                            **Chief United States District Judge**